ROANE, Judge.
This is a bill brought by the appellants, against the appellees, and their trustees, constituted by deed of trust, under which they claim, of 9th March 1819. Its object is, to restrain the latter from selling the land conveyed in bfust, until, by the aid of a court of equity, the title to the said land should be clearly settled, so that a fair sale of it may take place for an adequate price. That this could not probably be the case at present, is manifest, not only from what appears of record in the cause, but also from the admissions of the appellees themselves. They have urged in their answer as a reason, for a speedy sale of the premises, that if that sale should be delayed, their lien upon the land might in event be lost. Other purchasers (reasoning as they do,) would therefore give but a very inadequate price for the land, pending the suits which affect the title; and the interest of all parties might be materially injured, by proceeding to sell under the present circumstances.
It is urged as a reason why the court should not interfere, that the grantor, Bull, was fully apprised of these suits, and doubts about the title, when he made the deed; that he authorised a sale by the trustee in so short a time, that he could not have contemplated a previous settlement of the title, by a court of equity; and, that he had power to direct a sale by his trustee, of his interest in the land, notwithstanding the existence of the doubts aforesaid. If the words of the deed were so clear and explicit to this last point, as to admit of no doubt that such was his intention; if no persons but Bull himself were claimants before the court; and if on the other hand, the appel-lees were under no necessity to ask the assistance of a court of equity in relation to their right, we will not say (for we mean not to decide the question,) *how far the declared will of the grantor, in such circumstances, should *860 be allowed to prevail. Such however is not the case before us. The terms of the deed as to the first point are not so clear and imperious, as to exclude the interference of a court of equity: the general words therein, which on this point are relied upon, on the part of the appellees, are to be found in most deeds. The appellees, themselves, not having the legal title to the lands in question, are as to it, in the situation of subsequent mortgagees, and under the circumstances of this case, a court of equity ought not to permit a sale until the other claims are adjusted: and the appellants are not only, also bona fide creditors of Bull, but have an interest under his will, in causing the premises in question to sell for their full value; by augmenting the surplus arising from this sale for the payment of the debts due to Nourse, under the terms of the will: they proportionably increase that residuarj’ interest, which the will has subjected to the payment of their claim. It is only necessary for the court to decide the case which is actually before it. It is not necessary to decide upon the stronger case to which we have just alluded. We have no hesitation, however, in repeating the sentiments which have fallen from this bench; that a trustee, in a deed of trust, is to be considered the agent of both parties; that he ought to act impartially between them; that he ought to disregard the suggestions of either party inconsistent with that duty; and has in general, no greater powers, touching his trust, than a commissioner of a court of equity. We will add, that he may, of his own motion, apply to a court of equity to remove impediments to a fair execution of his trust: as also, if necessary, to adjust the actual sum, which ought to be raised by the sale. If he should fail however to do this, the party injured by his default, has an unquestionable right to do it. These principles apply with peculiar force to the actual case before us. The party, in this case, has enacted no imperious law (if *we may so express ourselves, ) ousting the jurisdiction of a court .of equity. That jurisdiction, therefore, exists in full force, on its ordinary principles, in relation to it. It is not the grantor himself who is to be affected, but a meritorious creditor; one equally entitled to the aid of a court of equity, with the ap-pellees themselves. That court delights to pay all creditors, and will not reject the just claims of any. Those claims cannot be paid, unless the fund in question, should be made to sell for its full value; and that cannot be done without the interposition, that is now prayed.
The analogy between this case, and the ordinary one of a subsequent mortgagee or incumbrancer, coming into a court of equity to secure his debt, is apt and clear: and it will lose none of its force, when the application is made to a summary tribunal created by the mere act of the parties.
In the ordinary case, the party coming into equity, must convene all the necessary parties, for the purpose of ascertaining the amount of the previous incumbrances, and is entitled to make the most of the fund for his and their benefit, by removing all the Impediments to a fair sale of the premises. Compared to these objects, a little delay is deemed of no account in a court of equity. Under the influence of these principles, the court is of opinion, that the decree of the court of Chancery dissolving the injunction is erroneous. It is therefore to be reversed with costs, the injunction reinstated, and the cause remanded to be finally proceeded in, pursuant to the principles of this decree.